**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GENERAL JOHN T. CHAIN, JR.(USAF, Retired), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09-cv-4897 |
| | ) | |
| v. | ) | |
| | ) | |
| LAKE FOREST PARTNERS, LLC, a Nevada | ) | |
| Corporation; TEC DEVELOPMENT | ) | |
| INTERNATIONAL, INC., a defunct Illinois | ) | |
| Corporation; GREAT PRAIRIE VENTURES, | ) | |
| LLC, a Wisconsin Corporation; VENTANA | ) | |
| FINANCIAL RESOURCES, INC., an Illinois | ) | |
| Corporation; BUZZ ENTERPRISES, INC., a | ) | |
| dissolved Illinois Corporation; and SANDRA | ) | |
| GOEKEN-MILES a/k/a SANDRA GOEKEN, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff General John T. Chain, Jr. ("General Chain"), by his attorneys, complains against Defendants Lake Forest Partners, LLC ("Lake Forest Partners"), Great Prairie Ventures, Inc. ("Great Prairie Ventures"), Tec Development International, Inc. ("Tec Development"), Ventana Financial Resources, Inc. ("Ventana"), Buzz Enterprises, Inc. ("Buzz Enterprises") and Sandra Goeken a/k/a Sandra Goeken-Miles ("Goeken"), as follows:

## SUMMARY OF THE CASE

1.    In August and October 2005, General Chain lent a total of $3.5 million to Lake Forest Partners pursuant to two loan agreements. Lake Forest Partners, through its principals, represented to General Chain that his money would be used to fund the development of three uninhabited islands located in the Commonwealth of the Bahamas known as "Royal Island." Lake Forest Partners promised to repay General Chain, with

interest, within one year.  Lake Forest Partners further promised to provide General Chain with two home lots on Royal Island.

2.      Lake Forest Partners's promises were false and it never intended to use nor did it use General Chain's money to fund the development of Royal Island.  Instead, Lake Forest Partners and its principals engaged in a *ponzi scheme* whereby it used General Chain's money to re-pay other investors who had lent Lake Forest Partners money based on promises of a high rate of return.  In addition, Lake Forest Partners transferred a portion of General Chain's money to other entities owned, controlled an/or affiliated with the owners of Lake Forest Partners.

3.      Lake Forest Partners' obligations to General Chain were guaranteed by its principals, Christopher T.  French ("French"), Albert J. Montano ("Montano") and Dr. Mark D. Weissman ("Weissman").  Neither Lake Forest Partners nor the guarantors paid any amounts to General Chain.  Therefore, in November 2007, General Chain sued Lake Forest Partners, French, Montano and Weissman.  In July 2009, General Chain obtained multi-million dollar judgments against Lake Forest Partners, French, Montano and Weissman.

4.      Through this action, General Chain seeks to recover the amounts that Lake Forest Partners fraudulently transferred to Tec Development, Great Prairie Ventures, Ventana Financial and Buzz Enterprises.  Each of these entities is either owned or controlled by an insider of Lake Forest Partners and received money from Lake Forest without providing reasonably equivalent value.

5.      In addition to seeking to recover the amounts Lake Forest Partners fraudulently transferred to entities affiliated with its principals, General Chain seeks to recover the amounts fraudulently transferred to Goeken.  Goeken, like General Chain, was an

2

investor in Lake Forest Partners. Unlike General Chain, however, Goeken received her principal investment back, plus an additional $550,000 in profit. The amount of Goeken's "profit" is traceable directly to amounts Lake Forest fraudulently obtained from General Chain. Because Goeken did not receive her profit as a result of a legitimate investment, but instead it was the by-product of the fraud perpetrated on General Chain, the amount Goeken received as a profit is a fraudulent transfer.

## **PARTIES**

6.      Plaintiff General John T. Chain, Jr. resides in Fort Worth, Texas and is a citizen of Texas. General Chain is 75 years old and is a retired United States Air Force General whose military career spanned 34 years and included serving as the Commander-In-Chief of the United States Strategic Air Command.

7.      Defendant Lake Forest Partners is a Nevada limited liability corporation with its principal place of business in Lake Forest, Illinois. For purposes of diversity jurisdiction, Lake Forest Partners is a citizen of Nevada and Illinois.

8.      Defendant Tec Development is an Illinois corporation, with its principal place of business in Chicago, Illinois. Tec Development is owned by French, who was a control person of Lake Forest Partners and a perpetrator of the *ponzi* scheme at issue in this case. For purposes of diversity jurisdiction, Tec Development is a citizen of Illinois and Wisconsin.

9.      Defendant Great Prairie Ventures is a Wisconsin corporation with its principal place of business in Fontana, Wisconsin. For purposes of diversity jurisdiction, Great Prairie Ventures is a citizen of Wisconsin. Great Prairie Ventures is owned and/or controlled by French, and is (or was) a member of Lake Forest Partners.

3

10.     Defendant Ventana Financial is an Illinois corporation with its principal place of business in the Northern District of Illinois.  For purposes of diversity jurisdiction, Ventana Financial is a citizen of Illinois.  Ventana Financial is controlled and/or was owned by Montano, and is (or was) a member of Lake Forest Partners.  Montano is or was an insider of Lake Forest Partners and is a perpetrator of the *ponzi* scheme at issue in this case.

11.     Defendant Buzz Enterprises is an Illinois corporation with its principal place of business in the Northern District of Illinois.  For purposes of diversity jurisdiction, Buzz Enterprises is a citizen of Illinois.  Upon information and belief, Buzz Enterprises is owned and/or controlled by Weissman.  Upon information and belief, Buzz Enterprises is (or was) a member of Lake Forest Partners.

12.     Defendant Goeken resides in the Northern District of Illinois and is a citizen of Illinois.

## JURISDICTION AND VENUE

13.     This is a civil action in which the United States District has original jurisdiction under the provisions of 28 U.S.C. § 1332(a) because General Chain and the Defendants are citizens of different states and because the amount in controversy exceeds $75,000.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because most of the Defendants reside in this judicial district and a substantial portion of the events or omissions giving rise to the General Chain's claims occurred in this judicial district.

## FACTUAL BACKGROUND

## Lake Forest Partners Raises Money

4

15.     In late 2004, French was presented with the opportunity to participate and fund the development of Royal Island.  French, along with Montano and Weissman, formed Lake Forest Partners to raise money for the Royal Island development and other purported real estate development projects.

16.     Beginning in or about late 2004, Lake Forest Partners began raising money for its purported development activities.  Lake Forest Partners solicited associates of Weissman and others for short-term loans.  Over the next several months, Lake Forest Partners entered into dozens of short-term loan agreements with prospective investors.  Typically, investors lent Lake Forest Partners between $25,000 to $100,000 and Lake Forest Partners promised to repay the loans within 30 to 120 days at a high rate of interest.

### Goeken Loans Money to Lake Forest Partners

17.     Goeken was an investor in Lake Forest Partners.  In or about May 2005, Goeken lent $1 million to Lake Forest Partners.  Pursuant to the terms of the loan, Lake Forest Partners agreed to re-pay Goeken by June 10, 2005, plus $200,000 "for the use of" the $1 million.  If the term of the loan needed to be extended past June 10, 2005, then Lake Forest Partners agreed to pay Goeken an additional $250,000 for a four-week extension.

18.     On or about June 13, 2005, Lake Forest Partners transferred $200,000 to Goeken and the due date of the loan was extended another four weeks.

19.     On or about July 19, 2005, Lake Forest Partners transferred $100,000 to Goeken and the due date of the loan was extended to August 2, 2005.

### Lake Forest Partners, French and Montano Defraud General Chain and Use the Proceeds to Pay Goeken and Insiders of Lake Forest Partners

20.     In addition to Goeken, by late July 2005, Lake Forest Partners owed investors at least $5 million and had incurred at least an additional $4 million of other debt.

21.     In or about late July and early August 2005, shortly before the date on which Lake Forest Partners was obligated to pay $1.25 million to Goeken, Lake Forest Partners approached General Chain, seeking a loan from him in the amount of $3 million. Montano, on behalf of Lake Forest Partners, explained that Lake Forest Partners was developing Royal Island and that it needed $3 million to finance the continued development of Royal Island until the island was acquired and take out financing was in place.

22.     Based on Lake Forest Partners's representations, on or about August 11, 2005, General Chain lent $3 million to Lake Forest Partners. Pursuant to a loan agreement between General Chain and Lake Forest Partners, Lake Forest Partners agreed to repay the $3 million loan amount, plus interest of twenty percent (20%) per annum, on or before August 14, 2006. In addition, Lake Forest Partners agreed to provide General Chain with one standard home lot on Royal Island once the island was acquired.

23.     On August 11, 2005, General Chain caused $3 million to be wire transferred to Lake Forest Partners's bank account at Harris Bank.

24.     Lake Forest Partners had $398.39 in its account immediately prior to General Chain's wire transfer of $3 million to Lake Forest Partners's account at Harris Bank. As a result of General Chain's wire transfer, Lake Forest Partners's balance in its account at Harris Bank was $3,000,398.39 on August 12, 2005.

25.     From August 11, 2005 through August 22, 2005, there were no other additions to Lake Forest Partners's account at Harris Bank.

6

26.     Contrary to its representations, Lake Forest Partners did not use the $3 million lent by General Chain to fund the development activities of Royal Island.  Instead, Lake Forest Partners, at the direction of French and Montano, transferred money to: (i) Goeken and other previous investors; and (ii) insiders of Lake Forest Partners and/or their related entities.

27.     Specifically, on or about August 15, 2005, Lake Forest Partners wire transferred $1.25 million to Goeken as repayment for her "loan" to Lake Forest Partners. More than 99% of the money transferred by Lake Forest Partners to Goeken on August 15, 2005 was money directly traceable to General Chain.  As a result of the August 15, 2005-transfer, Goeken received her initial $1 million back and obtained a "profit" on her three and one-half month investment of $550,000.

28.     Other investors of Lake Forest Partners also were repaid with the money lent to Lake Forest Partners by General Chain.

29.     In addition to repaying investors, French and Montano caused Lake Forest Partners to transfer most, if not all, of the remaining money lent by General Chain to entities affiliated with French.

30.     Specifically, on August 15, 2005, French and Montano caused Lake Forest Partners to transfer $500,000 to Tec Development.  Tec Development did not provide reasonably equivalent value to Lake Forest Partners for this transfer.

31.     In addition to the $500,000 transfer on August 15, 2005, from August 16, 2005 through the present, Lake Forest Partners transferred more than $600,000 to Tec Development.  Tec Development did not provide reasonably equivalent value in exchange for the transfers.

32.     On or about August 17, 2005, Montano caused Lake Forest Partners to transfer $350,000 to Ventana Financial.  In addition, Lake Forest Partners transferred at least another $20,000 to Ventana Financial from August 17, 2005 to the present.  Ventana Financial did not provide reasonably equivalent value to Lake Forest Partners for the transfers.

33.     On or about August 17, 2005, Lake Forest Partners transferred $15,000 to Buzz Enterprises.  On or about August 23, 2005, Lake Forest Partners transferred $20,000 to Buzz Enterprises.  Upon information and belief, from August 23, 2005 to the present, Lake Forest Partners transferred more than $75,000 to Buzz Enterprises.  Buzz Enterprises did not provide reasonably equivalent value to Lake Forest Partners for the transfers.

## General Chain Was Defrauded of An Additional $500,000

34.     In October 2005, Montano, on behalf of Lake Forest Partners, solicited General Chain seeking an additional $500,000 to fund the development of Royal Island.  As with General Chain's first loan, Montano represented that the money would be used to fund the development of Royal Island until the island could be acquired, lots on the island sold and the project could be refinanced.

35.     Based on Lake Forest Partners's representations, on or about October 27, 2005, General Chain lent Lake Forest Partners an additional $500,000.  Lake Forest Partners agreed to repay the $500,000 loan amount, plus interest of ten percent per (10%) for a 90-day period, on or before January 26, 2006.  Lake Forest Partners also agreed to provide General Chain with an additional home lot on Royal Island once the island was acquired.

36.     On October 27, 2005, General Chain caused $500,000 to be wire transferred to Lake Forest Partners's account at Harris Bank.

8

37.     Immediately prior to General Chain's $500,000 wire transfer, Lake Forest Partners had $949.48 in its account at Harris Bank.

38.     Lake Forest Partners did not use the $500,000 lent by General Chain to fund the development activities of Royal Island.  Instead, Lake Forest Partners, at the direction of French and Montano, transferred money to: (i) other previous investors; and (ii) insiders of Lake Forest Partners and/or their affiliated entities.

39.     On October 27, 2005, after Lake Forest Partners received the $500,000 from General Chain, it transferred $160,000 to Tec Development, $75,000 to Great Prairie Ventures and $20,000 to Ventana Financial.  Tec Development, Great Prairie Ventures and Ventana Financial did not provide reasonably equivalent value to Lake Forest Partners in exchange for the transfers.

40.     On or about October 28, 2005, Lake Forest Partners transferred $16,000 to Buzz Enterprises.  Buzz Enterprises did not provide reasonably equivalent value to Lake Forest Partners in exchange for the transfer.

**General Chain Sues Lake Forest Partners, French, Montano and Weissman**

41.     Neither Lake Forest Partners nor French, Montano and Weissman repaid any amounts to General Chain.  Therefore, on or about November 7, 2007, General Chain sued Lake Forest Partners, French, Montano and Weissman.

42.     On or about July 10, 2009, the United States District Court for the Northern District of Illinois entered judgment against Lake Forest Partners, French and Montano in the amount of $6,779,243.63.  The Court previously had entered judgment against Weissman in the amount of $6,707,776.61.

**COUNT ONE**
**AVOIDING FRAUDULENT TRANSFERS (ACTUAL FRAUD)**
**AGAINST LAKE FOREST PARTNERS AND TEC DEVELOPMENT**

43.     General Chain restates and realleges the allegations contained in paragraphs 1 through 42 as though set forth herein.

44.     The transfers made from Lake Forest Partners to Tec Development were made as part of Lake Forest Partners, French and Montano's scheme to defraud General Chain and other investors and were made with the actual intent to delay, hinder and/or defraud Lake Forest Partners's creditors, in that each of the following non-exclusive, badges of fraud existed in connection with the transfers:

> A.     The transfers were made to an entity owned and/or controlled by an insider of Lake Forest Partners;
>
> B.     The same control person of Lake Forest Partners (*i.e.*, French) retained constructive possession and control of the transferred assets;
>
> C.     Lake Forest Partners was insolvent prior to the transfers;
>
> D.     At the time of each of Lake Forest Partners's transfers to Tec Development, the transferred amounts represented a substantial portion of Lake Forest Partners's assets;
>
> E.     Lake Forest Partners received inadequate consideration in respect to the value of the assets transferred;

45.     Pursuant to 740 ILCS 160/8, each of Lake Forest Partners's transfers to Tec Development described herein may be avoided to the extent necessary to satisfy the liabilities of Lake Forest Partners.

WHEREFORE, General Chain respectfully requests that the Court, enter a judgment

against Lake Forest Partners and Tec Development:

A.    Avoiding the transfers described herein from Lake Forest Partners to Tec Development pursuant to 740 ILCS 160/8;

B.    Entering judgment pursuant to 740 ILCS 160/9 in favor of General Chain and against Lake Forest Partners and Tec Development, jointly and severally, in the amount of the assets fraudulently transferred from Lake Forest Partners to Tec Development, and other allowable damages, which amount will be determined at trial, plus punitive damages;

C.    Entering an injunction prohibiting Tec Development from furthering transferring any assets that previously were owned by Lake Forest Partners; and

D.    Granting such other equitable relief as may be just and appropriate.

## COUNT TWO
## AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD) AGAINST LAKE FOREST PARTNERS AND TEC DEVELOPMENT

46.    General Chain restates and realleges paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47.    Each of the transfers made from Lake Forest Partners to Tec Development was made for less than reasonably equivalent value.

48.    Lake Forest Partners was insolvent at the time of each of the transfers to Tec Development, having no assets and creditors in excess of $5 million.  In the alternative, Lake Forest Partners was rendered insolvent by the transfers.

49.    At and after the time of each of the transfers to Tec Development, Lake Forest Partners was engaged in business or about to engage in business for which any property remaining with Lake Forest Partners was an unreasonably small capital.  Due to the nature of Lake Forest Partners's *ponzi* scheme, at the time of the transfers, Lake Forest Partners

11

intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

50.     Pursuant to 740 ILCS 160/5(2) and 6, each of the transfers made from Lake Forest Partners to Tec Development is fraudulent as to the Lake Forest Partners's creditors. Pursuant to 740 ILCS 160/8, each of the transfers may be avoided to the extent necessary to satisfy Lake Forest Partners's liability to General Chain.

51.     Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Tec Development in the amount of the transfers.

WHEREFORE, General Chain respectfully requests that the Court, enter a judgment against Lake Forest Partners and Tec Development:

A.      Avoiding the transfers described herein from Lake Forest Partners to Tec Development pursuant to 740 ILCS 160/8;

B.      Entering judgment pursuant to 740 ILCS 160/9 in favor of General Chain and against Lake Forest Partners and Tec Development, jointly and severally, in the amount of the assets fraudulently transferred from Lake Forest Partners to Tec Development, and other allowable damages, which amount will be determined at trial, plus punitive damages;

C.      Entering an injunction prohibiting Tec Development from furthering transferring any assets that previously were owned by Lake Forest Partners; and

D.      Granting such other equitable relief as may be just and appropriate.

**COUNT THREE**
**AVOIDING FRAUDULENT TRANSFERS (ACTUAL FRAUD)**
**<u>AGAINST LAKE FOREST PARTNERS AND GREAT PRAIRIE VENTURES</u>**

52.     General Chain restates and realleges the allegations contained in paragraphs 1 through 51 as though set forth herein.

53.     On or about October 27, 2005, Lake Forest Partners transferred $75,000 to Great Prairie Ventures.  Upon information and belief, from August 11, 2005 to the present, Lake Forest Partners made other transfers to Great Prairie Ventures.  The transfers made from Lake Forest Partners to Great Prairie Ventures were made as part of Lake Forest Partners, French and Montano's scheme to defraud General Chain and other investors and were made with the actual intent to delay, hinder and/or defraud Lake Forest Partners'ss creditors, in that each of the following non-exclusive, badges of fraud existed in connection with the transfers:

> A.     The transfers were made to an entity owned and/or controlled by an insider of Lake Forest Partners;

> B.     The same control person of Lake Forest Partners (*i.e.*, French) retained constructive possession and control of the transferred assets;

> C.     Lake Forest Partners was insolvent prior to the transfers;

> D.     At the time of each of Lake Forest Partners's transfers to Great Prairie Ventures, the transferred amounts represented a substantial portion of Lake Forest Partners's assets;

> E.     Lake Forest Partners received inadequate consideration in respect to the value of the assets transferred;

54.     Pursuant to 740 ILCS 160/8, each of Lake Forest Partners's transfers to Great Prairie Ventures described herein may be avoided to the extent necessary to satisfy the liabilities of Lake Forest Partners.

WHEREFORE, General Chain respectfully requests that the Court, enter a judgment against Lake Forest Partners and Great Prairie Ventures:

A.      Avoiding the transfers described herein from Lake Forest Partners to Great Prairie Ventures  pursuant to 740 ILCS 160/8;

B.      Entering judgment pursuant to 740 ILCS 160/9 in favor of General Chain and against Lake Forest Partners and Great Prairie Ventures, jointly and severally, in the amount of the assets fraudulently transferred from Lake Forest Partners to Great Prairie Ventures, and other allowable damages, which amount will be determined at trial, plus punitive damages;

C.      Entering an injunction prohibiting Great Prairie Ventures from furthering transferring any assets that previously were owned by Lake Forest Partners; and

D.      Granting such other equitable relief as may be just and appropriate.

**COUNT FOUR**
**AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD)**
**AGAINST LAKE FOREST PARTNERS AND GREAT PRAIRIE VENTURES**

55.     General Chain restates and realleges paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56.     Each of the transfers made from Lake Forest Partners to Great Prairie Ventures was made for less than reasonably equivalent value.

57.     Lake Forest Partners was insolvent at the time of each of the transfers to Great Prairie Ventures, having no assets and creditors in excess of $5 million.  In the alternative, Lake Forest Partners was rendered insolvent by the transfers.

58.     At and after the time of each of the transfers to Great Prairie Ventures, Lake Forest Partners was engaged in business or about to engage in business for which any property remaining with Lake Forest Partners was an unreasonably small capital.  Due to the nature of Lake Forest Partners's *ponzi* scheme, at the time of the transfers, Lake Forest

14

Partners intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

59.     Pursuant to 740 ILCS 160/5(2) and 6, each of the transfers made from Lake Forest Partners to Great Prairie Ventures is fraudulent as to the Lake Forest Partners's creditors.  Pursuant to 740 ILCS 160/8, each of the transfers may be avoided to the extent necessary to satisfy Lake Forest Partners's liability to General Chain.

60.     Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Great Prairie Ventures in the amount of the transfers.

WHEREFORE, General Chain respectfully requests that the Court, enter a judgment against Lake Forest Partners and Great Prairie Ventures:

A.      Avoiding the transfers described herein from Lake Forest Partners to Great Prairie Ventures pursuant to 740 ILCS 160/8;

B.      Entering judgment pursuant to 740 ILCS 160/9 in favor of General Chain and against Lake Forest Partners and Great Prairie Ventures, jointly and severally, in the amount of the assets fraudulently transferred from Lake Forest Partners to Great Prairie Ventures, and other allowable damages, which amount will be determined at trial, plus punitive damages;

C.      Entering an injunction prohibiting Great Prairie Ventures from furthering transferring any assets that previously were owned by Lake Forest Partners; and

D.      Granting such other equitable relief as may be just and appropriate.

**COUNT FIVE**
**AVOIDING FRAUDULENT TRANSFERS (ACTUAL FRAUD)**
**AGAINST LAKE FOREST PARTNERS AND VENTANA FINANCIAL**

61.     General Chain restates and realleges the allegations contained in paragraphs 1 through 60 as though set forth herein.

62.     On or about August 17, 2005, Lake Forest Partners transferred $350,000 to Ventana Financial.  On or about October 27, 2005, Lake Forest Partners transferred $20,000 to Ventana Financial.  Upon information and belief, from August 11, 2005 to the present, Lake Forest Partners made other transfers to Ventana Financial.  The transfers made from Lake Forest Partners to Great Prairie Ventures were made as part of Lake Forest Partners, French and Montano's scheme to defraud General Chain and other investors and were made with the actual intent to delay, hinder and/or defraud Lake Forest Partners'ss creditors, in that each of the following non-exclusive, badges of fraud existed in connection with the transfers:

> A.      The transfers were made to an entity owned and/or controlled by an insider of Lake Forest Partners;
>
> B.      The same control person of Lake Forest Partners (*i.e.*, Montano) retained constructive possession and control of the transferred assets;
>
> C.      Lake Forest Partners was insolvent prior to the transfers;
>
> D.      At the time of each of Lake Forest Partners's transfers to Ventana Financial, the transferred amounts represented a substantial portion of Lake Forest Partners's assets;
>
> E.      Lake Forest Partners received inadequate consideration in respect to the value of the assets transferred;

16

63.     Pursuant to 740 ILCS 160/8, each of Lake Forest Partners's transfers to Ventana Financial described herein may be avoided to the extent necessary to satisfy the liabilities of Lake Forest Partners.

WHEREFORE, General Chain respectfully requests that the Court, enter a judgment against Lake Forest Partners and Ventana Financial:

A.     Avoiding the transfers described herein from Lake Forest Partners to Ventana Financial  pursuant to 740 ILCS 160/8;

B.     Entering judgment pursuant to 740 ILCS 160/9 in favor of General Chain and against Lake Forest Partners and Ventana Financial, jointly and severally, in the amount of the assets fraudulently transferred from Lake Forest Partners to Ventana Financial, and other allowable damages, which amount will be determined at trial, plus punitive damages;

C.     Entering an injunction prohibiting Ventana Financial from furthering transferring any assets that previously were owned by Lake Forest Partners; and

D.     Granting such other equitable relief as may be just and appropriate.

## COUNT SIX
## AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD) AGAINST LAKE FOREST PARTNERS AND VENTANA FINANCIAL

64.     General Chain restates and realleges paragraphs 1 through 63 of this Complaint as though fully set forth herein.

65.     Each of the transfers made from Lake Forest Partners to Ventana Financial was made for less than reasonably equivalent value.

66.     Lake Forest Partners was insolvent at the time of each of the transfers to Ventana Financial, having no assets and creditors in excess of $5 million.  In the alternative, Lake Forest Partners was rendered insolvent by the transfers.

67.     At and after the time of each of the transfers to Ventana Financial, Lake Forest Partners was engaged in business or about to engage in business for which any property remaining with Lake Forest Partners was an unreasonably small capital.  Due to the nature of Lake Forest Partners's *ponzi* scheme, at the time of the transfers, Lake Forest Partners intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

68.     Pursuant to 740 ILCS 160/5(2) and 6, each of the transfers made from Lake Forest Partners to Ventana Financial is fraudulent as to the Lake Forest Partners's creditors. Pursuant to 740 ILCS 160/8, each of the transfers may be avoided to the extent necessary to satisfy Lake Forest Partners's liability to General Chain.

69.     Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Ventana Financial in the amount of the transfers.

WHEREFORE, General Chain respectfully requests that the Court, enter a judgment against Lake Forest Partners and Ventana Financial:

A.     Avoiding the transfers described herein from Lake Forest Partners to Ventana Financial pursuant to 740 ILCS 160/8;

B.     Entering judgment pursuant to 740 ILCS 160/9 in favor of General Chain and against Lake Forest Partners and Ventana Financial, jointly and severally, in the amount of the assets fraudulently transferred from Lake Forest Partners to Tec Development, and other allowable damages, which amount will be determined at trial, plus punitive damages;

C.     Entering an injunction prohibiting Ventana Financial from furthering transferring any assets that previously were owned by Lake Forest Partners; and

D.     Granting such other equitable relief as may be just and appropriate.

**COUNT SEVEN**
**AVOIDING FRAUDULENT TRANSFERS**
**(ACTUAL FRAUD) AGAINST LAKE FOREST PARTNERS AND BUZZ**
**ENTERPRISES**

70.     General Chain restates and realleges the allegations contained in paragraphs 1 through 69 as though set forth herein.

71.     On or about August 17, 2005, Lake Forest Partners transferred $15,000 to Buzz Enterprises.  On or about August 23, 2005, Lake Forest Partners transferred $20,000 to Buzz Enterprises.  On or about Octobeber 28, 2005, Lake Forest Partners transferred $16,000 to Buzz Enterprises.  Upon information and belief, from August 11, 2005 to the present, Lake Forest Partners transferred additional amounts to Buzz Enterprises, which amounts are believed to exceed $75,000.   The transfers made from Lake Forest Partners to Buzz Enterprises were made as part of Lake Forest Partners, French and Montano's scheme to defraud General Chain and other investors and were made with the actual intent to delay, hinder and/or defraud Lake Forest Partners's creditors, in that each of the following non-exclusive, badges of fraud existed in connection with the transfers:

A.     The transfers were made to an entity owned and/or controlled by an insider of Lake Forest Partners;

B.     The same control person of Lake Forest Partners (*i.e.*, Weissman) retained constructive possession and control of the transferred assets;

C.     Lake Forest Partners was insolvent prior to the transfers;

D.      At the time of each of Lake Forest Partners's transfers to Buzz

Enterprises, the transferred amounts represented a substantial portion

of Lake Forest Partners's assets;

E.      Lake Forest Partners received inadequate consideration in respect to

the value of the assets transferred;

72.      Pursuant to 740 ILCS 160/8, each of Lake Forest Partners's transfers to Buzz

Enterprises described herein may be avoided to the extent necessary to satisfy the liabilities

of Lake Forest Partners.

WHEREFORE, General Chain respectfully requests that the Court, enter a judgment

against Lake Forest Partners and Buzz Enterprises:

A.      Avoiding the transfers described herein from Lake Forest Partners to Buzz

Enterprises  pursuant to 740 ILCS 160/8;

B.      Entering judgment pursuant to 740 ILCS 160/9 in favor of General Chain and

against Lake Forest Partners and Buzz Enterprises, jointly and severally, in the amount of the

assets fraudulently transferred from Lake Forest Partners to Buzz Enterprises, and other

allowable damages, which amount will be determined at trial, plus punitive damages;

C.      Entering an injunction prohibiting Buzz Enterprises from furthering

transferring any assets that previously were owned by Lake Forest Partners; and

D.      Granting such other equitable relief as may be just and appropriate.

**COUNT SIX**
**AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD)**
**AGAINST LAKE FOREST PARTNERS AND BUZZ ENTERPRISES**

73.      General Chain restates and realleges paragraphs 1 through 72 of this

Complaint as though fully set forth herein.

20

74.     Each of the transfers made from Lake Forest Partners to Buzz Enterprises was made for less than reasonably equivalent value.

75.     Lake Forest Partners was insolvent at the time of each of the transfers to Buzz Enterprises, having no assets and creditors in excess of $5 million.  In the alternative, Lake Forest Partners was rendered insolvent by the transfers.

76.     At and after the time of each of the transfers to Buzz Enterprises, Lake Forest Partners was engaged in business or about to engage in business for which any property remaining with Lake Forest Partners was an unreasonably small capital.  Due to the nature of Lake Forest Partners's *ponzi* scheme, at the time of the transfers, Lake Forest Partners intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

77.     Pursuant to 740 ILCS 160/5(2) and 6, each of the transfers made from Lake Forest Partners to Buzz Enterprises is fraudulent as to the Lake Forest Partners's creditors. Pursuant to 740 ILCS 160/8, each of the transfers may be avoided to the extent necessary to satisfy Lake Forest Partners's liability to General Chain.

78.     Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Buzz Enterprises in the amount of the transfers.

WHEREFORE, General Chain respectfully requests that the Court, enter a judgment against Lake Forest Partners and Buzz Enterprises:

A.     Avoiding the transfers described herein from Lake Forest Partners to Buzz Enterprises pursuant to 740 ILCS 160/8;

B.     Entering judgment pursuant to 740 ILCS 160/9 in favor of General Chain and against Lake Forest Partners and Buzz Enterprises, jointly and severally, in the amount of the

21

assets fraudulently transferred from Lake Forest Partners to Tec Development, and other

allowable damages, which amount will be determined at trial, plus punitive damages;

C.     Entering an injunction prohibiting Buzz Enterprises from furthering

transferring any assets that previously were owned by Lake Forest Partners; and

D.     Granting such other equitable relief as may be just and appropriate.

**COUNT NINE**
**AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD)**
**AGAINST LAKE FOREST PARTNERS AND GOEKEN**

79.     General Chain restates and realleges paragraphs 1 through 78 of this

Complaint as though fully set forth herein.

80.     Goeken invested $1 million with Lake Forest Partners in May 2005.

81.     Lake Forest Partners transferred $1,550,000 to Goeken in repayment of her

principal and profit on her $1 million investment.

82.     Lake Forest Partners paid Goeken her principal and profit with money

obtained by fraud.

83.     Goeken did not provide reasonably equivalent value for the amount of the

profit (*i.e.*, $550,000) she received from Lake Forest Partners.

84.     Lake Forest Partners was insolvent at the time it transferred money to

Goeken, having no assets and creditors in excess of $5 million.  In the alternative, Lake

Forest Partners was rendered insolvent by the transfers.

85.     At and after the time of each of the transfers to Goeken, Lake Forest Partners

was engaged in business or about to engage in business for which any property remaining

with Lake Forest Partners was an unreasonably small capital.  Due to the nature of Lake

22

Forest Partners's *ponzi* scheme, at the time of the transfers, Lake Forest Partners intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

86.     Pursuant to 740 ILCS 160/5(2) and 6, the $550,000 in profit Goeken received from Lake Forest Partners is fraudulent as to Lake Forest Partners's creditors.  Pursuant to 740 ILCS 160/8, the $1.25 million transfer on August 15, 2005 from Lake Forest Partners may be avoided up to the amount of the $550,000 profit received by Goeken from Lake Forest Partners.

87.     Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Goeken in the amount of the $550,000, plus pre-judgment interest.

WHEREFORE, General Chain respectfully requests that the Court, enter a judgment against Lake Forest Partners and Goeken:

A.     Avoiding the transfers described herein from Lake Forest Partners to Goeken up to $550,000 pursuant to 740 ILCS 160/8;

B.     Entering judgment pursuant to 740 ILCS 160/9 in favor of General Chain and against Lake Forest Partners and Goeken, jointly and severally, in the amount of $550,000, plus pre-judgment interest;

C.     Granting such other equitable relief as may be just and appropriate.

## COUNT TEN
## UNJUST ENRICHMENT AGAINST GOEKEN

88.     General Chain restates and realleges paragraphs 1 through 87 of this Complaint as though fully set forth herein.

89.     General Chain was fraudulently induced by Lake Forest Partners, French and Montano into loaning $3 million to Lake Forest Partners on or about August 11, 2005.

90.     One of the purposes of Lake Forest Partners, French and Montano's fraud on General Chain was so Lake Forest Partners could use his money to pay other investors, including Goeken.

91.     Lake Forest Partners wire transferred $1.25 million of the $3 million loaned by General Chain to Goeken.

92.     It would be unjust for Goeken to retain all of the $1.25 million of General Chain's money.

93.     Goeken's retention of all of the $1.25 million of General Chain's money violates fundamental principles of justice, equity and good conscience because Lake Forest Partners obtained the entirety of the $1.25 million through fraud.

WHEREFORE, General Chain respectfully requests that the Court enter judgment in favor of General Chain and against Goeken in an amount to be determined at trial, plus prejudgment interest, but which amount is, at minimum, $550,000.

Dated: August 10, 2009                         Respectfully submitted,

                                               GENERAL JOHN T. CHAIN, JR.


                                               By:___/s/ Jonathan M. Cyrluk_____
                                                     One of His Attorneys

Jonathan M. Cyrluk
Henry M. Baskerville
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, Illinois  60603
Phone: 312-338-0200
Fax:    312-338-0070
jcyrluk@stetlerandduffy.com
hbasker@stetlerandduffy.com