## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL JOHN T. CHAIN, JR. (USAF, Retired), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 cv 4897 |
| v. | ) | |
| | ) | |
| LAKE FOREST PARTNERS, LLC, a Nevada corporation; TEC DEVELOPMENT INTERNATIONAL, INC., a defunct Illinois corporation; GREAT PRAIRIE VENTURES, LLC, a Wisconsin corporation; VENTANA FINANCIAL RESOURCES, INC., an Illinois corporation; BUZZ ENTERPRISES, INC., a dissolved Illinois corporation; and SANDRA GOEKEN-MILES a/k/a SANDRA GOEKEN, an individual, | ) ) ) ) ) ) ) ) ) ) ) | JURY DEMAND |
| Defendants. | ) | |

### SANDRA GOEKEN-MILES' ANSWER AND AFFIRMATIVE DEFENSES

NOW COMES Sandra Goeken-Miles a/k/a Sandra Goeken ("Goeken"), by and through her attorneys, WOLIN KELTER & ROSEN, LTD., and for her Answer to the Complaint, states as follows:

### SUMMARY OF THE CASE

1.     In August and October 2005, General Chain lent a total of $3.5 million to Lake Forest Partners pursuant to two loan agreements.  Lake Forest Partners, through its principals, represented to General Chain that his money would be used to fund the development of three uninhabited islands located in the Commonwealth of the Bahamas known as "Royal Island."  Lake Forest Partners promised to repay General Chain, with interest, within one year.  Lake Forest Partners further promised to provide General Chain with two home lots on Royal Island.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 1 of Chain's Complaint.

2.      Lake Forest Partners's promises were false and it never intended to use nor did it use General Chain's money to fund the development of Royal Island.  Instead, Lake Forest Partners and its principals engaged in a *ponzi scheme* whereby it used General Chain's money to re-pay other investors who had lent Lake Forest Partners money based on promises of a high rate of return. In addition, Lake Forest Partners transferred a portion of General Chain's money to other entities owned, controlled an/or affiliated with the owners of Lake Forest Partners.

**ANSWER:**      Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 2 of Chain's Complaint, except Goeken states that the loan she made was in good faith and denies all allegations of Chain's Complaint that are inconsistent with the proposition that she made the loan in good faith and gave reasonably equivalent value for all monies she received.  Further, whereas Royal Island is in fact a development which has substantial value, it is unclear that the *ponzi scheme* which Chain alleges was in fact a *ponzi scheme*.

3.      Lake Forest Partners' obligations to General Chain were guaranteed by its principals, Christopher T. French ("French"), Albert J. Montano ("Montano") and Dr. Mark D. Weissman ("Weissman"). Neither Lake Forest Partners nor the guarantors paid any amounts to General Chain. Therefore, in November 2007, General Chain sued Lake Forest Partners, French, Montano and Weissman. In July 2009, General Chain obtained multimillion dollar judgments against Lake Forest Partners, French, Montano and Weissman.

**ANSWER:**      Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 3 of Chain's Complaint.

4.      Through this action, General Chain seeks to recover the amounts that Lake Forest Partners fraudulently transferred to Tee Development, Great Prairie Ventures, Ventana Financial

and Buzz Enterprises. Each of these entities is either owned or controlled by an insider of Lake Forest Partners and received money from Lake Forest without providing reasonably equivalent value.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 4 of Chain's Complaint.

5.     In addition to seeking to recover the amounts Lake Forest Partners fraudulently transferred to entities affiliated with its principals, General Chain seeks to recover the amounts fraudulently transferred to Goeken. Goeken, like General Chain, was an investor in Lake Forest Partners. Unlike General Chain, however, Goeken received her principal investment back, plus an additional $550,000 in profit. The amount of Goeken's "profit" is traceable directly to amounts Lake Forest fraudulently obtained from General Chain. Because Goeken did not receive her profit as a result of a legitimate investment, but instead it was the by-product of the fraud perpetrated on General Chain, the amount Goeken received as a profit is a fraudulent transfer.

**ANSWER:**     Goeken denies she was an investor and denies that any fraudulent transfer was made to her.  Goeken was a good faith lender who was repaid.  If a portion of Chain's money was used to refinance the debt owed to Goeken, Goeken is now and was at all times unaware of any impropriety and, in any event, Goeken gave reasonably equivalent value for all moneys she received.  Accordingly, she denies all allegations that any portion of the monies she received was the result of a less than legitimate transaction.

PARTIES

6.     Plaintiff General John T. Chain, Jr. resides in Fort Worth, Texas and is a citizen of Texas. General Chain is 75 years old and is a retired United States Air Force General whose military career spanned 34 years and included serving as the Commander-In-Chief of the United States Strategic Air Command.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 6 of Chain's Complaint.

7.      Defendant Lake Forest Partners is a Nevada limited liability corporation with its principal place of business in Lake Forest, Illinois. For purposes of diversity jurisdiction, Lake Forest Partners is a citizen of Nevada and Illinois.

**ANSWER:**     Admitted.

8.      Defendant Tec Development is an Illinois corporation, with its principal place of business in Chicago, Illinois. Tec Development is owned by French, who was a control person of Lake Forest Partners and a perpetrator of the *ponzi* scheme at issue in this case. For purposes of diversity jurisdiction, Tec Development is a citizen of Illinois and Wisconsin.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 8 of Chain's Complaint, except that whereas Royal Island is a real development with substantial value, she denies that it has been established that a *ponzi scheme* is at issue in this case.  Further, Goeken was a good faith lender who gave reasonably equivalent value for all monies she received and she denies that a *ponzi scheme* is at issue in the Counts against her.

9.      Defendant Great Prairie Ventures is a Wisconsin corporation with its principal place of business in Fontana, Wisconsin. For purposes of diversity jurisdiction, Great Prairie Ventures is a citizen of Wisconsin. Great Prairie Ventures is owned and/or controlled by French, and is (or was) a member of Lake Forest Partners.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 9 of Chain's Complaint, except she admits that French owns or controls Great Prairie Ventures.

10.    Defendant Ventana Financial is an Illinois corporation with its principal place of business in the Northern District of Illinois. For purposes of diversity jurisdiction, Ventana Financial is a citizen of Illinois. Ventana Financial is controlled and/or was owned by Montano, and is (or was) a member of Lake Forest Partners. Montano is or was an insider of Lake Forest Partners and is a perpetrator of the *ponzi* scheme at issue in this case.

**ANSWER:**    Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 10 of Chain's Complaint, except that whereas Royal Island is a real development with substantial value, she denies that it has been established that a *ponzi scheme* is at issue in this case.  Further, Goeken was a good faith lender who gave reasonably equivalent value for all monies she received and she denies that a *ponzi scheme* is at issue in the Counts against her.

11.    Defendant Buzz Enterprises is an Illinois corporation with its principal place of business in the Northern District of Illinois. For purposes of diversity jurisdiction, Buzz Enterprises is a citizen of Illinois. Upon information and belief, Buzz Enterprises is owned and/or controlled by Weissman. Upon information and belief, Buzz Enterprises is (or was) a member of Lake Forest Partners.

**ANSWER:**    Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 11 of Chain's Complaint.

12.    Defendant Goeken resides in the Northern District of Illinois and is a citizen of Illinois.

**ANSWER:**    Admitted.

<u>JURISDICTION AND VENUE</u>

13.    This is a civil action in which the United States District has original

jurisdiction under the provisions of 28 U.S.C. § 1332(a) because General Chain and the Defendants are citizens of different states and because the amount in controversy exceeds 875,000.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 13 of Chain's Complaint.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because most of the Defendants reside in this judicial district and a substantial portion of the events or omissions giving rise to the General Chain's claims occurred in this judicial district.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 14 of Chain's Complaint.

FACTUAL BACKGROUND

Lake Forest Partners Raises Money

15.     In late 2004, French was presented with the opportunity to participate and fund the development of Royal Island. French, along with Montano and Weissman, formed Lake Forest Partners to raise money for the Royal Island development and other purported real estate development projects.

**ANSWER:**     Goeken admits there is a Royal Island; that it is being developed; that French through one or more entities has an interest therein or the right to obtain an interest therein; and that he and his entities have sought funding to complete his or his entities' acquisitions.

16.     Beginning in or about late 2004, Lake Forest Partners began raising money for its purported development activities. Lake Forest Partners solicited associates of Weissman and others for short-term loans. Over the next several months, Lake Forest Partners entered into dozens of short-term loan agreements with prospective investors. Typically, investors lent Lake Forest Partners between $25,000 to $100,000 and Lake Forest Partners promised to repay the loans within 30 to 120

days at a high rate of interest.

**ANSWER:**    Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 16 of Chain's Complaint.

Goeken Loans Money to Lake Forest Partners

17.    Goeken was an investor in Lake Forest Partners. In or about May 2005, Goeken lent $1 million to Lake Forest Partners. Pursuant to the terms of the loan, Lake Forest Partners agreed to re-pay Goeken by June 10, 2005, plus $200,000 "for the use of the $1 million. If the term of the loan needed to be extended past June 10, 2005, then Lake Forest Partners agreed to pay Goeken an additional $250,000 for a four-week extension.

**ANSWER:**    Goeken denies that she was an investor. She was a lender who loaned monies in good faith. She gave reasonably equivalent value for what she received. Goeken denies all allegations that are inconsistent with the foregoing.

18.    On or about June 13, 2005, Lake Forest Partners transferred $200,000 to Goeken and the due date of the loan was extended another four weeks.

**ANSWER:**    Goeken admits that the due date of her loan was extended for consideration.

19.    On or about July 19, 2005, Lake Forest Partners transferred $100,000 to Goeken and the due date of the loan was extended to August 2, 2005.

**ANSWER:**    Goeken admits that the due date on her loan was extended for consideration.

20.    In addition to Goeken, by late July 2005, Lake Forest Partners owed investors at least $5 million and had incurred at least an additional $4 million of other debt.

**ANSWER:**    Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 20 of Chain's Complaint.

21.    In or about late July and early August 2005, shortly before the date on which Lake

Forest Partners was obligated to pay $1.25 million to Goeken, Lake Forest Partners approached General Chain, seeking a loan from him in the amount of $3 million. Montano, on behalf of Lake Forest Partners, explained that Lake Forest Partners was developing Royal Island and that it needed $3 million to finance the continued development of Royal Island until the island was acquired and take out financing was in place.

**ANSWER:** Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 21 of Chain's Complaint.

22. Based on Lake Forest Partner's representations, on or about August 11, 2005, General Chain lent $3 million to Lake Forest Partners. Pursuant to a loan agreement between General Chain and Lake Forest Partners, Lake Forest Partners agreed to repay the $3 million loan amount, plus interest of twenty percent (20%) per annum, on or before August 14, 2006. In addition, Lake Forest Partners agreed to provide General Chain with one standard home lot on Royal Island once the island was acquired.

**ANSWER:** Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 22 of Chain's Complaint.

23. On August 11, 2005, General Chain caused $3 million to be wire transferred to Lake Forest Partner's bank account at Harris Bank.

**ANSWER:** Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 23 of Chain's Complaint.

24. Lake Forest Partners had $398.39 in its account immediately prior to General Chain's wire transfer of $3 million to Lake Forest Partner's account at Harris Bank. As a result of General Chain's wire transfer, Lake Forest Partner's balance in its account at Harris Bank was $3,000,398.39 on August 12, 2005.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 24 of Chain's Complaint.

25.     From August 11, 2005 through August 22, 2005, there were no other additions to Lake Forest Partners's account at Harris Bank.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 25 of Chain's Complaint.

26.     Contrary to its representations, Lake Forest Partners did not use the $3 million lent by General Chain to fund the development activities of Royal Island. Instead, Lake Forest Partners, at the direction of French and Montano, transferred money to: (i) Goeken and other previous investors; and (ii) insiders of Lake Forest Partners and/or their related entities.

**ANSWER:**     Goeken denies she was an investor.  She was a good faith lender who gave reasonably equivalent value for all monies she received.  Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 26 of Chain's Complaint.  However, whereas Chain was apparently aware that he was lending money as bridge financing until take out financing was in place, he knew or reasonably should have known that existing obligations might or would be paid with proceeds from his loan.

27.     Specifically, on or about August 15, 2005, Lake Forest Partners wire transferred $1.25 million to Goeken as repayment for her "loan" to Lake Forest Partners. More than 99% of the money transferred by Lake Forest Partners to Goeken on August 15, 2005 was money directly traceable to General Chain. As a result of the August 15, 2005- transfer, Goeken received her initial $1 million back and obtained a "profit" on her three and one-half month investment of $550,000.

**ANSWER:**     Goeken admits she was repaid with agreed upon interest and denies she obtained a "profit." Goeken gave reasonably equivalent value for what she received. Otherwise, Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 27 of Chain's Complaint.

28.     Other investors of Lake Forest Partners also were repaid with money lent to Lake Forest Partners by General Chain.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 28 of Chain's Complaint but denies that she was an investor and asserts she was a good faith lender who gave reasonably equivalent value for all sums she received.

29.     In addition to repaying investors, French and Montano caused Lake Forest Partners to transfer most, if not all, of the remaining money lent by General Chain to entities affiliated with French.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 29 of Chain's Complaint.

30.     Specifically, on August 15, 2005, French and Montano caused Lake Forest Partners to transfer $500,000 to Tec Development. Tec Development did not provide reasonably equivalent value to Lake Forest Partners for this transfer.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 30 of Chain's Complaint.

31.     In addition to the $500,000 transfer on August 15, 2005, from August 16, 2005 through the present, Lake Forest Partners transferred more than $600,000 to Tec Development. Tec Development did not provide reasonably equivalent value in exchange for the transfers.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set

forth in paragraph 31 of Chain's Complaint.

32.     On or about August 17, 2005, Montano caused Lake Forest Partners to transfer $350,000 to Ventana Financial. In addition, Lake Forest Partners transferred at least another $20,000 to Ventana Financial from August 17, 2005 to the present. Ventana Financial did not provide reasonably equivalent value to Lake Forest Partners for the transfers.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 32 of Chain's Complaint.

33.     On or about August 17, 2005, Lake Forest Partners transferred $15,000 to Buzz Enterprises. On or about August 23, 2005, Lake Forest Partners transferred $20,000 to Buzz Enterprises. Upon information and belief, from August 23, 2005 to the present, Lake Forest Partners transferred more than $75,000 to Buzz Enterprises. Buzz Enterprises did not provide reasonably equivalent value to Lake Forest Partners for the transfers.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 33 of Chain's Complaint.

<u>General Chain Was Defrauded of An Additional $500,000</u>

34.     In October 2005, Montano, on behalf of Lake Forest Partners, solicited General Chain seeking an additional $500,000 to fund the development of Royal Island. As with General Chain's first loan, Montano represented that the money would be used to fund the development of Royal Island until the island could be acquired, lots on the island sold and the project could be refinanced.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 34 of Chain's Complaint.

35.     Based on Lake Forest Partners's representations, on or about October 27, 2005, General Chain lent Lake Forest Partners an additional $500,000. Lake Forest Partners agreed to repay

the $500,000 loan amount, plus interest of ten percent per (10%) for a 90-day period, on or before January 26, 2006. Lake Forest Partners also agreed to provide General Chain with an additional home lot on Royal Island once the island was acquired.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 35 of Chain's Complaint.

36.     On October 27, 2005, General Chain caused $500,000 to be wire transferred to Lake Forest Partners's account at Harris Bank.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 36 of Chain's Complaint.

37.     Immediately prior to General Chain's $500,000 wire transfer, Lake Forest Partners had $949.48 in its account at Harris Bank.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 37 of Chain's Complaint.

38.     Lake Forest Partners did not use the $500,000 lent by General Chain to fund the development activities of Royal Island. Instead, Lake Forest Partners, at the direction of French and Montano, transferred money to: (i) other previous investors; and (ii) insiders of Lake Forest Partners and/or their affiliated entities.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 38 of Chain's Complaint.

39.     On October 27, 2005, after Lake Forest Partners received the $500,000 from General Chain, it transferred $160,000 to Tec Development, $75,000 to Great Prairie Ventures and $20,000 to Ventana Financial. Tee Development, Great Prairie Ventures and Ventana Financial did not provide reasonably equivalent value to Lake Forest Partners in exchange for the transfers.

**ANSWER:**    Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 39 of Chain's Complaint.

40.    On or about October 28, 2005, Lake Forest Partners transferred $16,000 to Buzz Enterprises. Buzz Enterprises did not provide reasonably equivalent value to Lake Forest Partners in exchange for the transfer.

**ANSWER:**    Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 40 of Chain's Complaint.

<u>General Chain Sues Lake Forest Partners, French, Montano and Weissman</u>

41.    Neither Lake Forest Partners nor French, Montano and Weissman repaid any amounts to General Chain. Therefore, on or about November 7, 2007, General Chain sued Lake Forest Partners, French, Montano and Weissman.

**ANSWER:**    Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 41 of Chain's Complaint.

42.    On or about July 10, 2009, the United States District Court for the Northern District of Illinois entered judgment against Lake Forest Partners, French and Montano in the amount of $6,779,243.63. The Court previously had entered judgment against Weissman in the amount of $6,707,776.61.

**ANSWER:**    Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 42 of Chain's Complaint.

COUNT ONE
AVOIDING FRAUDULENT TRANSFERS (ACTUAL FRAUD)
<u>AGAINST LAKE FOREST PARTNERS AND TEC DEVELOPMENT</u>

43.    General Chain restates and realleges the allegations contained in paragraphs 1 through 42 as though set forth herein.

**ANSWER:** Goeken's answers to paragraphs 1 through 42 are here incorporated and made a part hereof.

44.     The transfers made from Lake Forest Partners to Tec Development were made as part of Lake Forest Partners, French and Montano's scheme to defraud General Chain and other investors and were made with the actual intent to delay, hinder and/or defraud Lake Forest Partners's creditors, in that each of the following non-exclusive, badges of fraud existed in connection with the transfers:

    A.    The transfers were made to an entity owned and/or controlled by an insider of Lake Forest Partners;

    B.    The same control person of Lake Forest Partners *(i.e.,* French) retained constructive possession and control of the transferred assets;

    C.    Lake Forest Partners was insolvent prior to the transfers;

    D.    At the time of each of Lake Forest Partners's transfers to Tec Development, the transferred amounts represented a substantial portion of Lake Forest Partners's assets;

    E.    Lake Forest Partners received inadequate consideration in respect to the value of the assets transferred;

**ANSWER:** Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 44 of Chain's Complaint, except as follows: Goeken denies she was an investor. She was a good faith lender who gave reasonably equivalent value for all monies she received. Chain, according to his own allegations, was apparently aware he was lending money as bridge financing until take out financing was in place. Therefore, he knew or should have known existing obligations might or would be paid with the monies he lent, and therefore it is unclear that he was a victim of fraud. Moreover, whereas Royal Island is a

real development with substantial value, badges C & D may well not exist.

45.     Pursuant to 740 ILCS 160/8, each of Lake Forest Partners's transfers to Tec Development described herein may be avoided to the extent necessary to satisfy the liabilities of Lake Forest Partners.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 45 of Chain's Complaint.

COUNT TWO
AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD)
AGAINST LAKE FOREST PARTNERS AND TEC DEVELOPMENT

46.     General Chain restates and realleges paragraphs 1 through 45 of this Complaint as though fully set forth herein.

**ANSWER:**     Goeken's answers to paragraphs 1 through 45 are here incorporated and made a part hereof.

47.     Each of the transfers made from Lake Forest Partners to Tec Development was made for less than reasonably equivalent value.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 47 of Chain's Complaint.

48.     Lake Forest Partners was insolvent at the time of each of the transfers to Tec Development, having no assets and creditors in excess of $5 million. In the alternative, Lake Forest Partners was rendered insolvent by the transfers.

**ANSWER:**     Goeken denies that Lake Forest Partners had no assets.  Otherwise, Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 48 of Chain's Complaint.

49.     At and after the time of each of the transfers to Tec Development, Lake Forest Partners

was engaged in business or about to engage in business for which any property remaining with Lake Forest Partners was an unreasonably small capital. Due to the nature of Lake Forest Partners's *ponzi* scheme, at the time of the transfers, Lake Forest Partners intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

**ANSWER:** Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 49 of Chain's Complaint, except that whereas Royal Island is a real development with substantial value, she denies that it has been established that a *ponzi scheme* is at issue in this case. Further, Goeken was a good faith lender who gave reasonably equivalent value for all monies she received and she denies that a *ponzi scheme* is at issue in the Counts against her.

50. Pursuant to 740 ILCS 160/5(2) and 6, each of the transfers made from Lake Forest Partners to Tec Development is fraudulent as to the Lake Forest Partners's creditors. Pursuant to 740 ILCS 160/8, each of the transfers may be avoided to the extent necessary to satisfy Lake Forest Partners's liability to General Chain.

**ANSWER:** Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 50 of Chain's Complaint.

51. Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Tec Development in the amount of the transfers.

**ANSWER:** Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 51 of Chain's Complaint.

COUNT THREE
AVOIDING FRAUDULENT TRANSFERS (ACTUAL FRAUD)
AGAINST LAKE FOREST PARTNERS AND GREAT PRAIRIE VENTURES

52. General Chain restates and realleges the allegations contained in paragraphs 1

through 51 as though set forth herein.

**ANSWER:**    Goeken's answers to paragraphs 1 through 51 are here incorporated and made a part hereof.

53.    On or about October 27, 2005, Lake Forest Partners transferred $75,000 to Great Prairie Ventures. Upon information and belief, from August 11, 2005 to the present, Lake Forest Partners made other transfers to Great Prairie Ventures. The transfers made from Lake Forest Partners to Great Prairie Ventures were made as part of Lake Forest Partners, French and Montano's scheme to defraud General Chain and other investors and were made with the actual intent to delay, hinder and/or defraud Lake Forest Partner's creditors, in that each of the following non-exclusive, badges of fraud existed in connection with the transfers:

A.    The transfers were made to an entity owned and/or controlled by an insider of Lake Forest Partners;

B.    The same control person of Lake Forest Partners (*i.e.,* French) retained constructive possession and control of the transferred assets;

C.    Lake Forest Partners was insolvent prior to the transfers;

D.    At the time of each of Lake Forest Partners's transfers to Great Prairie Ventures, the transferred amounts represented a substantial portion of Lake Forest Partner's assets;

E.    Lake Forest Partners received inadequate consideration in respect to the value of the assets transferred;

**ANSWER:**    Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 53 of Chain's Complaint, except as follows: Goeken denies she was an investor. She was a good faith lender who gave reasonably equivalent value for all monies she received. Chain, according to his

own allegations, was apparently aware he was lending money as bridge financing until take out financing was in place. Therefore, he knew or should have known existing obligations might or would be paid with the monies he lent, and therefore it is unclear that he was a victim of fraud. Moreover, whereas Royal Island is a real development with substantial value, badges C & D may well not exist.

54. Pursuant to 740 ILCS 160/8, each of Lake Forest Partners's transfers to Great Prairie Ventures described herein may be avoided to the extent necessary to satisfy the liabilities of Lake Forest Partners.

**ANSWER:** Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 54 of Chain's Complaint.

COUNT FOUR
AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD)
AGAINST LAKE FOREST PARTNERS AND GREAT PRAIRIE VENTURES

55. General Chain restates and realleges paragraphs 1 through 54 of this Complaint as though fully set forth herein.

**ANSWER:** Goeken's answers to paragraphs 1 through 54 are here incorporated and made a part hereof.

56. Each of the transfers made from Lake Forest Partners to Great Prairie Ventures was made for less than reasonably equivalent value.

**ANSWER:** Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 56 of Chain's Complaint.

57. Lake Forest Partners was insolvent at the time of each of the transfers to Great Prairie Ventures, having no assets and creditors in excess of $5 million. In the alternative, Lake Forest Partners was rendered insolvent by the transfers.

**ANSWER:**     Goeken denies that Lake Forest Partners had no assets. Otherwise, Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 57 of Chain's Complaint.

58.     At and after the time of each of the transfers to Great Prairie Ventures, Lake Forest Partners was engaged in business or about to engage in business for which any property remaining with Lake Forest Partners was an unreasonably small capital. Due to the nature of Lake Forest Partners's *ponzi* scheme, at the time of the transfers, Lake Forest Partners intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 58 of Chain's Complaint, except that whereas Royal Island is a real development with substantial value, she denies that it has been established that a *ponzi scheme* is at issue in this case. Further, Goeken was a good faith lender who gave reasonably equivalent value for all monies she received and she denies that a *ponzi scheme* is at issue in the Counts against her.

59.     Pursuant to 740 ILCS 160/5(2) and 6, each of the transfers made from Lake Forest Partners to Great Prairie Ventures is fraudulent as to the Lake Forest Partners's creditors. Pursuant to 740 ILCS 160/8, each of the transfers may be avoided to the extent necessary to satisfy Lake Forest Partners's liability to General Chain.

**ANSWER:**     Goeken lacks knowledge sufficient to admit or deny paragraph 59 of Chain's Complaint.

60.     Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Great Prairie Ventures in the amount of the transfers.

**ANSWER:**     Goeken lacks knowledge sufficient to admit or deny paragraph 60 of Chain's

Complaint.

## COUNT FIVE
## AVOIDING FRAUDULENT TRANSFERS (ACTUAL FRAUD)
## AGAINST LAKE FOREST PARTNERS AND VENTANA FINANCIAL

61.    General Chain restates and realleges the allegations contained in paragraphs 1 through 60 as though set forth herein.

**ANSWER:**    Goeken's answers to paragraphs 1 through 61 are here incorporated and made a part hereof.

62.    On or about August 17, 2005, Lake Forest Partners transferred $350,000 to Ventana Financial. On or about October 27, 2005, Lake Forest Partners transferred $20,000 to Ventana Financial. Upon information and belief, from August 11, 2005 to the present, Lake Forest Partners made other transfers to Ventana Financial. The transfers made from Lake Forest Partners to Great Prairie Ventures were made as part of Lake Forest Partners, French and Montano's scheme to defraud General Chain and other investors and were made with the actual intent to delay, hinder and/or defraud Lake Forest Partners's creditors, in that each of the following non-exclusive, badges of fraud existed in connection with the transfers:

A.    The transfers were made to an entity owned and/or controlled by an insider of Lake Forest Partners;

B.    The same control person of Lake Forest Partners (*i.e.,* Montano) retained constructive possession and control of the transferred assets;

C.    Lake Forest Partners was insolvent prior to the transfers;

D.    At the time of each of Lake Forest Partners's transfers to Ventana Financial, the transferred amounts represented a substantial portion of Lake Forest Partners's assets;

E.      Lake Forest Partners received inadequate consideration in respect to the value of the assets transferred;

**ANSWER:**      Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 62 of Chain's Complaint, except as follows: Goeken denies she was an investor.  She was a good faith lender who gave reasonably equivalent value for all monies she received.  Chain, according to his own allegations, was apparently aware he was lending money as bridge financing until take out financing was in place.  Therefore, he knew or should have known existing obligations might or would be paid with the monies he lent, and therefore it is unclear that he was a victim of fraud.  Moreover, whereas Royal Island is a real development with substantial value, badges C & D may well not exist.

63.      Pursuant to 740 ILCS 160/8, each of Lake Forest Partners's transfers to Ventana Financial described herein may be avoided to the extent necessary to satisfy the liabilities of Lake Forest Partners.

**ANSWER:**      Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 63 of Chain's Complaint.

COUNT SIX
AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD)
AGAINST LAKE FOREST PARTNERS AND VENTANA FINANCIAL

64.      General Chain restates and realleges paragraphs 1 through 63 of this Complaint as though fully set forth herein.

**ANSWER:**      Goeken's answers to paragraphs 1 through 63 are here incorporated and made a part hereof.

65.      Each of the transfers made from Lake Forest Partners to Ventana Financial

was made for less than reasonably equivalent value.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 65 of Chain's Complaint.

66.     Lake Forest Partners was insolvent at the time of each of the transfers to Ventana Financial, having no assets and creditors in excess of $5 million. In the alternative, Lake Forest Partners was rendered insolvent by the transfers.

**ANSWER:**     Goeken denies that Lake Forest Partners had no assets. Otherwise, Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 66 of Chain's Complaint.

67.     At and after the time of each of the transfers to Ventana Financial, Lake Forest Partners was engaged in business or about to engage in business for which any property remaining with Lake Forest Partners was an unreasonably small capital. Due to the nature of Lake Forest Partners's *ponzi* scheme, at the time of the transfers, Lake Forest Partners intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

**ANSWER:**     Goeken lacks knowledge sufficient to admit or deny the specific allegations of paragraph 67, except that whereas Royal Island is a real development with substantial value, she denies that it has been established that a *ponzi scheme* is at issue in this case and denies the allegation of intent or belief that there would be an inability to pay debts. Further, Goeken was a good faith lender who gave reasonably equivalent value for all monies she received and she denies that a *ponzi scheme* is at issue in the Counts against her.

68.     Pursuant to 740 ILCS 160/5(2) and 6, each of the transfers made from Lake Forest Partners to Ventana Financial is fraudulent as to the Lake Forest Partners's creditors. Pursuant to 740 ILCS

160/8, each of the transfers may be avoided to the extent necessary to satisfy Lake Forest Partners's liability to General Chain.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 68 of Chain's Complaint.

69.     Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Ventana Financial in the amount of the transfers.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 69 of Chain's Complaint.

COUNT SEVEN
AVOIDING FRAUDULENT TRANSFERS
(ACTUAL FRAUD) AGAINST LAKE FOREST PARTNERS AND BUZZ
ENTERPRISES

70.     General Chain restates and realleges the allegations contained in paragraphs 1 through 69 as though set forth herein.

**ANSWER:**     Goeken's answers to paragraphs 1 through 69 are here incorporated and made a part hereof.

71.     On or about August 17, 2005, Lake Forest Partners transferred $15,000 to Buzz Enterprises. On or about August 23, 2005, Lake Forest Partners transferred $20,000 to Buzz Enterprises. On or about October 28, 2005, Lake Forest Partners transferred $16,000 to Buzz Enterprises. Upon information and belief, from August 11, 2005 to the present, Lake Forest Partners transferred additional amounts to Buzz Enterprises, which amounts are believed to exceed $75,000. The transfers made from Lake Forest Partners to Buzz Enterprises were made as part of Lake Forest Partners, French and Montano's scheme to defraud General Chain and other investors and were made with the actual intent to delay, hinder and/or defraud Lake Forest Partner's creditors, in that each of the following non-exclusive, badges of fraud existed in connection with the transfers:

A.      The transfers were made to an entity owned and/or controlled by an insider of Lake Forest Partners;

B.      The same control person of Lake Forest Partners (*i.e.,* Weissman) retained constructive possession and control of the transferred assets;

C.      Lake Forest Partners was insolvent prior to the transfers;

D.      At the time of each of Lake Forest Partner's transfers to Buzz Enterprises, the transferred amounts represented a substantial portion of Lake Forest Partner's assets;

E.      Lake Forest Partners received inadequate consideration in respect to the value of the assets transferred;

**ANSWER:**      Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 71 of Chain's Complaint, except as follows: Goeken denies she was an investor. She was a good faith lender who gave reasonably equivalent value for all monies she received. Chain, according to his own allegations, was apparently aware he was lending money as bridge financing until take out financing was in place. Therefore, he knew or should have known existing obligations might or would be paid with the monies he lent, and therefore it is unclear that he was a victim of fraud. Moreover, whereas Royal Island is a real development with substantial value, badges C & D may well not exist.

72.      Pursuant to 740 ILCS 160/8, each of Lake Forest Partners's transfers to Buzz Enterprises described herein may be avoided to the extent necessary to satisfy the liabilities of Lake Forest Partners.

**ANSWER:**      Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 72 of Chain's Complaint.

## COUNT SIX
## AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD)
## AGAINST LAKE FOREST PARTNERS AND BUZZ ENTERPRISES

73.     General Chain restates and realleges paragraphs 1 through 72 of this Complaint as though fully set forth herein.

**ANSWER:**     Goeken's answers to paragraphs 1 through 72 are here incorporated and made a part hereof.

74.     Each of the transfers made from Lake Forest Partners to Buzz Enterprises was made for less than reasonably equivalent value.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 74 of Chain's Complaint.

75.     Lake Forest Partners was insolvent at the time of each of the transfers to Buzz Enterprises, having no assets and creditors in excess of $5 million. In the alternative, Lake Forest Partners was rendered insolvent by the transfers.

**ANSWER:**     Goeken denies that Lake Forest Partners had no assets.  Otherwise, Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 75 of Chain's Complaint.

76.     At and after the time of each of the transfers to Buzz Enterprises, Lake Forest Partners was engaged in business or about to engage in business for which any property remaining with Lake Forest Partners was an unreasonably small capital. Due to the nature of Lake Forest Partners's *ponzi* scheme, at the time of the transfers, Lake Forest Partners intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

**ANSWER:**     Goeken lacks knowledge sufficient to admit or deny the specific allegations of paragraph 76, except that whereas Royal Island is a real development with

substantial value, she denies that it has been established that a *ponzi scheme* is at issue in this case and denies the allegation of intent or belief that there would be an inability to pay debts. Further, Goeken was a good faith lender who gave reasonably equivalent value for all monies she received and she denies that a *ponzi scheme* is at issue in the Counts against her.

77. Pursuant to 740 ILCS 160/5(2) and 6, each of the transfers made from Lake Forest Partners to Buzz Enterprises is fraudulent as to the Lake Forest Partners's creditors. Pursuant to 740 ILCS 160/8, each of the transfers may be avoided to the extent necessary to satisfy Lake Forest Partners's liability to General Chain.

**ANSWER:**   Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 77 of Chain's Complaint.

78. Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Buzz Enterprises in the amount of the transfers.

**ANSWER:**   Goeken lacks knowledge of facts sufficient to admit or deny the specific allegations set forth in paragraph 78 of Chain's Complaint.

COUNT NINE
AVOIDING FRAUDULENT CONVEYANCE (CONSTRUCTIVE FRAUD)
AGAINST LAKE FOREST PARTNERS AND GOEKEN

79. General Chain restates and realleges paragraphs 1 through 78 of this Complaint as though fully set forth herein.

**ANSWER:**   Goeken's answers to paragraphs 1 through 78 are here incorporated and made a part hereof.

80. Goeken invested $1 million with Lake Forest Partners in May 2005.

**ANSWER:**   Goeken denies she was an investor. She was a lender who lent money in good faith.

81.     Lake Forest Partners transferred $1,550,000 to Goeken in repayment of her principal and profit on her $1 million investment.

**ANSWER:**     Goeken admits her loan was repaid and asserts she gave reasonably equivalent value for what she received.  She denies the payments received by her were "profits."   Accordingly, Goeken denies the specific allegations set forth in paragraph 81 of Chain's Complaint.

82.     Lake Forest Partners paid Goeken her principal and profit with money obtained by fraud.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the source of funds that paid her, but denies she was a participant in any fraud and denies she was paid "profits."

83.     Goeken did not provide reasonably equivalent value for the amount of the profit (*i.e.*, $550,000) she received from Lake Forest Partners.

**ANSWER:**     Denied.

84.     Lake Forest Partners was insolvent at the time it transferred money to Goeken, having no assets and creditors in excess of $5 million. In the alternative, Lake Forest Partners was rendered insolvent by the transfers.

**ANSWER:**     Denied.

85.     At and after the time of each of the transfers to Goeken, Lake Forest Partners was engaged in business or about to engage in business for which any property remaining with Lake Forest Partners was an unreasonably small capital. Due to the nature of Lake Forest Partner's *ponzi* scheme, at the time of the transfers, Lake Forest Partners intended to incur or believed it would incur debts that would be beyond its ability to pay as such debts matured.

**ANSWER:**     Denied.

86.     Pursuant to 740 ILCS 160/5(2) and 6, the $550,000 in profit Goeken received from Lake Forest Partners is fraudulent as to Lake Forest Partners's creditors. Pursuant to 740 ILCS 160/8, the $1.25 million transfer on August 15, 2005 from Lake Forest Partners may be avoided up to the amount of the $550,000 profit received by Goeken from Lake Forest Partners.

**ANSWER:**     Denied.

87.     Pursuant to 740 ILCS 160/9, judgment may be entered against Lake Forest Partners and Goeken in the amount of the $550,000, plus pre-judgment interest.

**ANSWER:**     Denied.

## AFFIRMATIVE DEFENSES AS TO COUNT NINE

As and for her Affirmative Defenses to Count Nine of Chain's Complaint, Goeken states as follows:

1.     Chain's Complaint fails to state a claim against Goeken upon which relief can be granted.

2.     As a bridge lender, Chain knew or should have known that monies he lent might or would be used to pay existing legitimate obligations such as the obligations to Goeken and, therefore, none of those payments were a fraud on him.

3.     Goeken was a good faith lender who gave reasonably equivalent value for all monies she received.

## COUNT TEN
## UNJUST ENRICHMENT AGAINST GOEKEN

88.     General Chain restates and realleges paragraphs 1 through 87 of this Complaint as though fully set forth herein.

**ANSWER:**     Goeken's answers to paragraphs 1 through 87 are here incorporated and made a part

hereof.

89.     General Chain was fraudulently induced by Lake Forest Partners, French and Montano into loaning $3 million to Lake Forest Partners on or about August 11, 2005.

**ANSWER:**     Based on the allegations of Chain's Complaint, Goeken denies paragraph 89.

90.     One of the purposes of Lake Forest Partners, French and Montano's fraud on General Chain was so Lake Forest Partners could use his money to pay other investors, including Goeken.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit the allegations of paragraph 89, but based on the allegation of Chain's Complaint, Goeken denies he was defrauded and accordingly denies paragraph 90.

91.     Lake Forest Partners wire transferred $1.25 million of the $3 million loaned by General Chain to Goeken.

**ANSWER:**     Goeken lacks knowledge of facts sufficient to admit or deny the source of funds that repaid her.

92.     It would be unjust for Goeken to retain all of the $1.25 million of General Chain's money.

**ANSWER:**     Denied.

93.     Goeken's retention of all of the $1.25 million of General Chain's money violates fundamental principles of justice, equity and good conscience because Lake Forest Partners obtained the entirety of the $1.25 million through fraud.

**ANSWER:**     Denied.

## <u>AFFIRMATIVE DEFENSES AS TO COUNT TEN</u>

As and for her Affirmative Defense to Counts Ten of Chain's Complaint, Goeken states

as follows:

1.      Chain's Complaint fails to state a claim against Goeken upon which relief can be granted.

2.      As a bridge lender, Chain knew or should have known that monies he lent might or would be used to pay existing legitimate obligations such as the obligations to Goeken and, therefore, none of those payments were a fraud on him.

3.      Goeken was a good faith lender who gave reasonably equivalent value for all monies she received.

Respectfully submitted,

Sandra Goeken-Miles

By:   /s/Harold Rosen
       One of her Attorneys


Harold Rosen
Elizabeth Schutte
WOLIN, KELTER & ROSEN, LTD.
55 W. Monroe St., Suite 3600
Chicago, Illinois  60603
(312) 424-0600